**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

United Capital Real Estate Development Corp.,

     Plaintiff,

    v.

Sahara US Corporation, Sahara Plaza LLC., Sahara Dreams LLC., and Subrata Roy, Qatar Investment Authority Advisory (USA) Inc., Katara Hospitality, Qatar Holding LLC, Qatar Financial Centre Authority,

     Defendants.

Case Nos. 18-cv-07703-GHW
     18-cv-07707-GHW

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS SAHARA US CORPORATION, SAHARA PLAZA LLC, AND SAHARA**
**DREAMS LLC'S MOTION TO VACATE NOTICES OF PENDENCY AND**
**DISMISS THE AMENDED COMPLAINT**

       **MILBANK, TWEED, HADLEY &**
       **McCLOY LLP**
       Alan J. Stone
       Thomas A. Quinn
       28 Liberty St.
       New York, NY 10005
       Phone:  (212) 530-5000
       Fax:  (212) 530-5219
       astone@milbank.com
       tquinn@milbank.com

Dated:  September 13, 2018

**TABLE OF CONTENTS**

Table of Authorities ...................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

ARGUMENT .................................................................................................................. 5

I.     The Notices of Pendency Must Be Vacated Immediately .................................. 5

II.    The Amended Complaint Should Be Dismissed With Prejudice ....................... 8

        A.     The Breach of Contract Claim Must Be Dismissed ............................... 9

                1.     The Four-Page Memorandum of Understanding is an Unenforceable "Agreement to Agree" That Contemplated Definitive Documentation.... 10

                2.     The MOU Contains an Express Reservation of the Right Not To Be Bound ...................................................................................................... 12

                3.     Agreements to Purchase $685 Million Worth of Interests in Iconic Hotels Are Not Finalized in Four-Page MOUs ......................................... 13

                4.     Plaintiff Failed to Satisfy Conditions Precedent to Sahara US's Performance ............................................................................................... 14

        B.     Plaintiff Does Not Sufficiently Allege Breach of the Non-Circumvent Agreement and Cannot Allege Damages ............................................... 15

        C.     Plaintiff's Claims for Unjust Enrichment and Fraudulent Inducement Should Be Dismissed as Duplicative of the Breach of Contract Claim ........................... 16

        D.     Because Plaintiff Does Not Have a Valid Contract and Fails To Plead the Required Elements, Plaintiff's Tortious Interference Claim Must Also Be Dismissed ............................................................................................. 19

        E.     Because Plaintiff Fails to Allege Any Conduct By Plaza LLC, Dreams LLC, and Subrata Roy, They Must Be Dismissed From the Action with Prejudice...... 20

CONCLUSION ............................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*5303 Realty Corp. v. O & Y Equity Corp.*,
   64 N.Y.2d 313 (1984) ..................................................................................1, 2, 6, 7, 8

*Acquino v. Douglass Elliman Realty, LLC*,
   155 A.D.3d 472 (1st Dep't 2017) ...............................................................................18

*Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*,
   145 F.3d 543 (2d Cir. 1998)..............................................................................9, 12, 13

*Aksman v. Xiongwei Ju*,
   21 A.D.3d 260 (1st Dep't 2005) ...........................................................................11, 12

*Aleem v. Experience Hendrix, L.L.C.*,
   No. 16 CIV 9206(ER), 2017 WL 3105870 (S.D.N.Y. July 20, 2017) ........................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................8

*Benham v. eCommission Sols., LLC*,
   118 A.D.3d 605 (1st Dep't 2014) ...............................................................................17

*Brennan v. J.P. Morgan Securities, Inc.*,
   7 Misc.3d 1013(A) (Sup. Ct. N.Y. Cty. Aug. 31, 2004).............................................17

*Brook v. Simon & Partners, LLP*,
   No. 17 CIV. 6435 (GBD), 2018 WL 2383142 (S.D.N.Y. May 14, 2018) ..................18

*Brown v. Brown*,
   12 A.D.3d 176 (1st Dep't 2004) .................................................................................17

*Brown v. Cara*,
   420 F.3d 148 (2d Cir. 2005).......................................................................................10

*Brown v. Daikin America Inc.*,
   756 F.3d 219 (2d Cir. 2014)..........................................................................................8

*Brown v. Noble, Inc.*,
   29 Misc. 3d 1230(A) (Sup. Ct. N.Y. Cty. Dec. 1, 2010) ...........................................20

*Burrowes v. Combs*,
   25 A.D.3d 370 (1st Dep't 2006) ............................................................................19, 20

*Cabrera Capital Markets, LLC v. Further Lane Sec., L.P.*,
   No. 12 CIV. 2898 DAB, 2013 WL 5462373 (S.D.N.Y. Sept. 25, 2013) ...............................14

*Carol v. Madison Plaza Assocs., LLC*,
   95 A.D.3d 735 (1st Dep't 2012) ........................................................................................20

*Chambers v. Weinstein*,
   44 Misc. 3d 1224(A) (Sup. Ct. N.Y. Cty. Aug. 22, 2014) ......................................................21

*Corsello v. Verizon*,
   18 N.Y.3d 777 (2012) ........................................................................................................16

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)..................................................................................................2

*DeCristofaro v. Nest Seekers E. End, LLC*,
   54 Misc. 3d 1209(A) (Sup. Ct. Suffolk Cty. Jan. 11, 2017) ...................................................10

*Delidimitropoulos v. Karantinidis*,
   142 A.D.3d 1038 (2d Dep't 2016) .......................................................................................7

*Doller v. Prescott*,
   56 Misc.3d 1204(A) (Sup. Ct. Albany Cty. June 26, 2017) ......................................16, 17, 18

*Exportaciones Del Futuro S.A. de C.V. v. Iconix Brand Grp. Inc.*,
   No. 07 CIV 4145 (LBS), 2007 WL 2981949 (S.D.N.Y. Oct. 10, 2007) ..................................13

*First Invs. Corp. v. Liberty Mut. Ins. Co.*,
   152 F.3d 162, 168 (2d Cir. 1998)........................................................................................8

*Gregor v. Rossi*,
   120 A.D.3d 447 (1st Dep't 2014) ........................................................................................18

*Grgurev v. Licul*,
   No. 1:15-CV-9805-GHW, 2016 WL 6652741 (S.D.N.Y. Nov. 10, 2016)..............................13

*Gross v. Neiman*,
   147 A.D.3d 505 (1st Dep't 2017) ........................................................................................7

*Hawkins on behalf of MedApproach, L.P. v. MedApproach Holdings, Inc.*,
   No. 1:13-CV-05434(ALC)(SDA), 2018 WL 1371404 (S.D.N.Y. Jan. 9, 2018)....................12

*Hawkins on behalf of MedApproach, L.P. v. MedApproach Holdings, Inc.*,
   No. 1:13-CV-05434(ALC), 2018 WL 1384502 (S.D.N.Y. Mar. 18, 2018) ...........................12

*Hyman v. Burgess*,
   125 A.D.3d 1213 (3d Dep't 2015) .......................................................................................16

*IDT Corp. v. Tyco Grp.*,
13 N.Y.3d 209 (2009) ................................................................................................10, 14

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n,*
655 F.3d 136 (2d Cir. 2011)...................................................................................................9

*IDT Corp. v. Tyco Grp.*,
13 N.Y.3d 209 (2009) ................................................................................................10, 14

*Krantz v. Chateau Stores of Canada Ltd.*,
256 A.D.2d 186 (1st Dep't 1998) .......................................................................................17

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) ........................................................................................................19

*Laufer v. Ostrow*,
55 N.Y.2d 305 (1982) ........................................................................................................21

*Laura Corio M.D., PLLC v. R. Lewin Interior Design, Inc.*,
49 A.D.3d 411 (1st Dep't 2008) .......................................................................................18

*Lebovits v. Bassman*,
120 A.D.3d 1198 (2d Dep't 2014).......................................................................................18

*Microbanc, LLC v. InspireMD, Inc.*,
No. 16 CV 3860-LTS, 2017 WL 722038 (S.D.N.Y. Feb. 23, 2017).....................................15

*National Gear & Piston, Inc. v. Cummins Power Systems, LLC,*
861 F.Supp.2d 344 (S.D.N.Y. 2012)....................................................................................9

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
19 N.Y.3d 584 (2012) ........................................................................................................19

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
36 Misc. 3d 1205(A) (Sup. Ct. N.Y. Cty. Apr. 21, 2010), *aff'd*, 84 A.D.3d 692
(1st Dep't 2011), *aff'd*, 19 N.Y.3d 584 (2012) .....................................................................19

*Piccirillo v. Ravenal*,
161 A.D.2d 253 (1st Dep't 1990), *lv. dismissed*, 76 N.Y.2d 935 (1990) .............................6, 7

*Prudential Ins. Co. of Am. v. Hilton Hotels Corp.*,
No. 95 CIV. 5575 (KMW), 1996 WL 340002 (S.D.N.Y. June 19, 1996).............................11

*Saul v. Vidokle*,
151 A.D.3d 780 (2d Dep't 2017).........................................................................................8

*Subaru Distributors Corp. v. Subaru of America, Inc.*,
425 F.3d 119 (2d Cir. 2005)..................................................................................................9

iv

*Transcience Corp v. Big Time Toys,*
   50 F.Supp.3d 441 (S.D.N.Y. 2014)..................................................................................9

*Ulysses I & Co. v. Feldstein,*
   No. 01 CV 3102 LAP, 2002 WL 1813851 (S.D.N.Y. Aug. 8, 2002), *aff'd sub*
   *nom Bridgewater Operating Corp. v. Feldstein, 346 F.3d 27 (2d Cir. 2003)* .........................5

**Statutes**

CPLR § 301.......................................................................................................................21

CPLR § 302(a)(1) ...........................................................................................................21

CPLR § 6501.............................................................................................................5, 6, 7

CPLR § 6514.......................................................................................................................8

FRCP § 9(b) .....................................................................................................................18

FRCP § 12(b)(6) ...............................................................................................................1

FRCP § 64.....................................................................................................................1, 5

Sahara US Corporation ("Sahara US"), Sahara Plaza LLC ("Plaza LLC"), and Sahara Dreams LLC ("Dreams LLC" and, collectively, the "Sahara Defendants") respectfully submit this memorandum of law in support of their Motion to Vacate Plaintiff's Notices of Pendency pursuant to Fed. R. Civ. P. ("FRCP") 64 and N.Y. Civ. Prac. L. & R. ("CPLR") § 6501, and to Dismiss the Amended Complaint under FRCP 12(b)(6).

## PRELIMINARY STATEMENT

The Court should vacate and cancel the unlawful notices of pendency against real property in which Plaintiff has no interest—The Plaza Hotel and The Dream Downtown Hotel. Plaintiff's unsupportable underlying claims relate solely to an alleged right to purchase interests in LLCs that own those hotels.  Because New York law only permits notices of pendency related to claims on real property—and unequivocally refuses to permit notices of pendency where claims relate to membership interests in a property-owning entity—the notices of pendency must be vacated under the long-standing New York Court of Appeals precedent of *5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313 (1984).

Plaintiff's conclusory Amended Verified Complaint ("Amended Complaint")— which consists principally of a breach of contract claim and various duplicative, re-stylized pleadings of the breach of contract claim—is based on a non-binding, four-page preliminary memorandum of understanding which Plaintiff alleges created a binding contract to purchase majority interests in LLCs owning iconic Manhattan hotels in a transaction costing nearly $700 million.  But the memorandum of understanding contemplated the execution of future, definitive agreements and satisfaction of several conditions precedent, none of which occurred.  The notices of pendency should therefore be vacated and Plaintiff's underlying action dismissed with prejudice.

1

## STATEMENT OF FACTS[1]

Before the events that form the basis for the Amended Complaint, Defendant Sahara US owned interests in two limited liability companies:  Dreams LLC, which owns the leasehold interest in The Dream Downtown Hotel, and Plaza LLC, which owns The Plaza Hotel (Dreams LLC and Plaza LLC, collectively, are referred to as the "LLCs").  (Am. Compl.  ¶¶ 6-8.) Sahara US marketed for sale its interest in the LLCs with multiple parties, one of which was Plaintiff United Capital Real Estate Development Corp. ("UCRED" or "Plaintiff").  (Am. Compl. ¶¶ 25, 34.)

On February 19, 2018, Subrata Roy signed a Memorandum of Understanding / Letter of Intent (MOU) on behalf of Sahara US, whereby Plaintiff UCRED would acquire Sahara US's 75% membership interest in Plaza LLC and 85% membership interest in Dreams LLC for a fixed sum of $662,000,000.  (Ex. C.)  A revised MOU, dated February 27, 2018, changed the fixed sum to $685,000,000.  (Ex. D.)  The revised MOU was signed by Roy on February 27, 2018, and by Anton Werner, on behalf of UCRED, on February 28, 2018.[2]  (Ex. D.)  The MOUs are incorporated into the Complaint[3] and Amended Complaint by reference.  (Compl. ¶ 10; Am. Compl. ¶ 10.)

---

[1] Unless otherwise stated, the factual allegations are drawn from Plaintiff's Amended Complaint.  Additional facts are draft from the documents incorporated by reference or which Plaintiff relied upon in framing the Complaint (Ex. A.) and the Amended Complaint (Ex. B.), which the Court may consider in conjunction with this 12(b)(6) motion. *See, e.g.*, *Aleem v. Experience Hendrix, L.L.C.*, No. 16 CIV 9206(ER), 2017 WL 3105870, at *3 (S.D.N.Y. July 20, 2017) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).  As they must, for the purposes of this motion only, the Sahara Defendants accept as true all well-pled allegations.

[2] The parties also signed a related Letter of Understanding ("LOU") on February 19 and 27, 2018 related to operation and management agreements which provided that its terms were "co-extensive with the terms and conditions of the MOU" and that UCRED's obligations to perform under the LOU "shall be only upon successful closing of the Transaction pursuant to the PSA."  (Exs. E, F.)

[3] As explained *infra* Part I, courts must look to the ***original*** complaint when assessing the validity of notices of pendency, and defects cannot be cured by a subsequent amended complaint.  *See 5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 320 (1984).

The MOU contemplated executing future, more definitive agreements if certain conditions were met.  (Ex. D.)  The MOU states that it "sets forth the material terms and conditions under which [the parties] . . . shall execute a mutually agreeable, Purchase and Sale Agreement ("PSA") for the transaction," and that the "MOU is necessary in order to proceed with the next step which is to escrow [$30 million] and execute a mutually agreed upon Purchase and Sale Agreement (PSA) and Escrow Agreement on immediate basis but not later than 10 days from signing this MOU."  *Id.*  The MOU also provides for Sahara US's verification of Plaintiff's Proof of Funds.  *Id.*

The MOU provides for explicit, rapid time periods for the completion of conditions precedent to continued negotiation, none of which were met.  UCRED was required to provide a "***draft of PSA to [Sahara US] within 3 days*** from the signing of this MOU for its review and finalizing of the terms of the PSA."[4]  (Ex. D.)  The Escrow Agreement would be "***suitably modified within (3) three days*** from the date of this MOU" and "subject to the terms and conditions to be mutually agreed upon by the parties to the PSA."  *Id.*  The MOU provides that the Escrow Account will be opened ***within 3 days*** from the signing of this MOU" and "funds amounting to ***USD 30,000,000 (Thirty Million US dollars) will be transferred to the Escrow Account within Two business days*** from the opening of the Escrow Account."  *Id.*  And UCRED was to provide proof of funds to complete the transaction "***within 3 business days from the signing of this MOU***."  *Id.*  Plaintiff alleges no facts showing that any of these conditions were satisfied.  (*See generally* Am. Compl.)

---

[4] In this Memorandum of Law, emphasis is added and internal citations and quotations are omitted unless otherwise specified.

Furthermore, under the heading "VALIDITY OF THIS MOU", the MOU expressly contained two additional conditions precedent to its own validity, proscribing that it was "subject to" the following: (1) verification of Proof of Funds by Sahara US; and (2) within three business days of the signing of the MOU, Plaintiff would provide a comfort letter from a bank showing that Plaintiff had the "ability to arrange balance amount of funds to the tune of USD 500 million." (Ex. D.)  As with the other conditions precedent, Plaintiff does not allege any facts plausibly showing that these two conditions were satisfied.  (*See generally* Am. Compl.)

Separately, Plaintiff and Sahara US also signed a Nondisclosure Agreement ("NDA"), dated February 16, 2018.  (Ex. G.)  The NDA provides, in relevant part, that Sahara "will not, without written permission from UCRED, directly or indirectly, contact, circumvent, compete or solicit or deal with or otherwise become involved with" a list of certain enumerated entities which were "introduced, directly or indirectly," to Sahara US through UCRED.  *Id.* Plaintiff does not allege that the eventual purchaser of Sahara US's Membership Interests in Plaza LLC is on that list.[5]  (*See id.*; Am. Compl. ¶¶ 25, 38.)

Plaintiff conclusorily alleges that UCRED "is in full compliance with each and every legal obligation contained in [the MOU] including but not limited to submission [sic] proof of funds and placement of the required monies into a segregated account."  (Am. Compl. ¶ 19.) But the Amended Complaint is utterly devoid of any details regarding the satisfaction of contract conditions, including the dates when these obligations were supposedly satisfied, how they were satisfied, who was involved, and whether they were satisfied within the strict time periods set out

---

[5] Tellingly, and as described below, the NDA is silent with respect to any exclusivity provisions, and as to Sahara US's rights to negotiate freely and transact business with third parties.  (Ex. G.)

in the MOU.  (*See generally* Am. Compl.)  Further, Plaintiff does not even allege that the parties

ever executed a PSA or signed an Escrow Agreement.  (*Id.*)

Negotiations fell apart and on June 22, 2018, UCRED filed its Summons and

Complaint and notices of pendency on the Plaza and Dream hotels.  (Ex. A.)  Plaintiff raises a

breach of contract claim related to the transfer of Membership Interests in Plaza LLC and Dreams

LLC, related tort claims which are merely duplicative, re-stylized restatements of the contract

claim, a tortious interference claim which is unsupportable without an enforceable underlying

contract, and an insufficiently pled claim related to the NDA.  (*See generally* Am. Compl.)

Plaintiff filed an Amended Complaint on July 11, 2018.  (Ex. B.)

Plaintiff filed patently unlawful notices of pendency on The Plaza Hotel and The

Dream Downtown Hotel on June 22, 2018,[6] and an amended notice of pendency on the Plaza on

July 3.  (Exs. A, H.)

## ARGUMENT

## I.      THE NOTICES OF PENDENCY MUST BE VACATED IMMEDIATELY

This Court must look to New York law to evaluate notices of pendency, and has

the power to direct cancellation of the notices.  *See Ulysses I & Co. v. Feldstein*, No. 01 CV 3102

LAP, 2002 WL 1813851, at *17 and n.10 (S.D.N.Y. Aug. 8, 2002), *aff'd sub nom. Bridgewater

Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003) (citing, *inter alia*, FRCP 64).  Binding

precedent from the New York Court of Appeals requires the immediate cancellation of the notices

of pendency because Plaintiff's claims relate to the sale of Membership Interests—not an interest

in real property, as is required for a notice of pendency under CPLR 6501.

---

[6] The Notices of Pendency were filed on the state court docket on June 22, 2018 with the original Summons and Complaint, and were separately filed again on June 25, 2018.

CPLR 6501 provides for the filing of a notice of pendency in an action "in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, *real property*." CPLR 6501 (emphasis added). "The drastic impact of a notice of pendency requires a strict application of CPLR 6501." *Piccirillo v. Ravenal*, 161 A.D.2d 253, 254 (1st Dep't 1990), *lv. dismissed*, 76 N.Y.2d 935 (1990) (affirming cancellation of pendency where action related to shareholder's rights in property-owning entity, which is not real property). Further, "the complaint filed with the notice of pendency must be adequate unto itself; a subsequent, amended complaint cannot be used to justify an earlier notice of pendency." *5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 320 (1984). Determinatively, the Court of Appeals holds that a notice of pendency must be cancelled in an action to enforce a contract to sell shares—such as the Membership Interests that are the subject of this action—even if the share transfer would provide plaintiff with a controlling interest in an entity that owns real property. *See 5303 Realty Corp.*, 64 N.Y.2d at 317.

The seminal Court of Appeals case *5303 Realty Corp.*, which cancelled a notice of pendency, addressed a situation nearly identical to Plaintiff's claims here. In *5303 Realty Corp.*, plaintiff negotiated with a parent corporation which owned 97% of a subsidiary that's "sole business was owning and operating the office building that plaintiff wished to acquire." *5303 Realty Corp.*, 64 N.Y.2d at 315. The transaction was structured as a conveyance of stock rather than an outright transfer of the deed. *Id.* When the transaction failed to close, plaintiff filed a notice of pendency and sued for specific performance. *See id.* The Court of Appeals, applying a strict interpretation of CPLR 6501, cancelled the notice of pendency because the action did not affect real property. *Id.* at 323.

> The powerful impact that this device has on the alienability of property, when conjoined with the facility with which it may be obtained, calls for its narrow

application to only those lawsuits directly affecting title to, or the possession, use or enjoyment of, real property. Consequently, *a suit to specifically perform a contract for the sale of stock representing a beneficial ownership of real estate will not support the filing of a notice of pendency.*

\* \* \*

The question presented on this appeal concerns the right to obtain a provisional remedy authorized by the Legislature. Specifically, we are asked to decide whether an action to enforce a contract to sell the ownership interest in a realty-owning entity may be accompanied by a notice of pendency pursuant to CPLR 6501. Because the terms of the statute and its history do not support plaintiff's claimed right to this provisional remedy, this court must reverse the decisions below and order that plaintiff's notice of pendency be canceled.

*5303 Realty Corp.*, 64 N.Y.2d at 317.

The principle articulated in *5303 Realty Corp.* remains good law.  *See, e.g.*, *Gross v. Neiman*, 147 A.D.3d 505, 507  (1st Dep't 2017) ("The notice of pendency should be vacated since plaintiffs have no legitimate claim to the real property of the partnership; their interest amounts to personal property, which does not entitle them to a notice of pendency."); *Piccirillo*, 161 A.D.2d at 254 (affirming cancellation of pendency where "a review of the complaint demonstrates that the action does not directly affect the title to real property, but instead involves a shareholder's rights in a corporation whose sole asset is the property described in the notice of pendency").  *See also Delidimitropoulos v. Karantinidis*, 142 A.D.3d 1038, 1039 (2d Dep't 2016) (cancelling notices of pendency where "plaintiff alleges that he has an ownership interest in . . . an entity that is alleged to own the properties listed in the subject notices of pendency" because plaintiff's claim related to "an ownership interest in [the entity], and not to any claim of an ownership interest in the real property itself").

On its face, Plaintiff's original complaint is virtually indistinguishable from *5303 Realty Corp.* and requires the same result: cancellation of the notices of pendency.  Plaintiff's allegations relate exclusively to Sahara US's ownership of "70% of the shares of the Sahara Plaza

and . . . 85% of the shares of the Sahara Dreams, (The Shares), making Sahara US the majority shareholder in both Sahara Plaza and Sahara Dreams." (Compl. ¶ 8.) Because "a suit to specifically perform a contract for the sale of stock representing a beneficial ownership of real estate will not support the filing of a notice of pendency," the notices must be cancelled regardless of the viability of Plaintiff's underlying claims. *See 5303 Realty Corp.*, 64 N.Y.2d at 317. For the above-stated reasons, and because Plaintiff has not commenced this action in good faith, CPLR 6514(b), the Sahara Defendants should also be awarded "costs and expenses occasioned by the filing and cancellation, in addition to any costs of the action." CPLR 6514(c); *Saul v. Vidokle*, 151 A.D.3d 780, 781 (2d Dep't 2017) ("[B]ecause there was no binding real estate contract between the parties, the plaintiff's notice of pendency pertaining to the property should have been cancelled, and the defendant awarded costs and expenses occasioned by the cancellation (*see* CPLR 6514[a], [c])."

## II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

To survive a 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Allegations that only infer the "mere possibility of misconduct" are insufficient to survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *Id*. But when the factual allegations in the complaint amount to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," the complaint should be dismissed. *Brown v. Daikin America Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

**A.      The Breach of Contract Claim Must Be Dismissed**

To state a claim for breach of contract under New York law, Plaintiff must allege (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach. *First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). On a motion to dismiss, courts may consider the sufficiency of the complaint, as well as any documents attached to the complaint, incorporated into the complaint by reference, or which the complaint relies upon and are integral to the complaint, including the contract itself. *See Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (considering the contract forming the basis of Plaintiff's claims in deciding the merits of a motion to dismiss where it was "integral to the complaint"); *Subaru Distributors Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."). While the court should resolve any contractual ambiguities in favor of the plaintiff, courts "are not obliged to accept the allegations of the complaint as to how to construe [the contract]." *Id.* (affirming dismissal of breach of contract claim).

Courts applying New York law routinely dismiss breach of contract claims where the alleged contract is a non-binding agreement. *See National Gear & Piston, Inc. v. Cummins Power Systems, LLC*, 861 F.Supp.2d 344, 358 (S.D.N.Y. 2012) (applying New York law) (dismissing breach of contract claim where "the language of the Agreement makes clear that Defendants did not intend to be bound until the Agreement was executed"); *Transcience Corp v. Big Time Toys, LLC*, 50 F.Supp.3d 441, 451 (S.D.N.Y. 2014) (dismissing breach of contract claim due to claimant's failure to plead the performance of its own contractual obligations).

The Memorandum of Understanding at issue here is clearly non-binding. "Parties to proposed commercial transactions often enter into preliminary agreements, which may provide for the execution of more formal agreements." *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 547 (2d Cir. 1998) (applying New York law). "Ordinarily, where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract." *Id.* at 548. Courts look at four factors in determining whether a preliminary agreement is binding: (1) whether the agreement contains open terms or if all of the terms have been agreed upon; (2) the language of the agreement; (3) whether the agreement at issue is the type that is usually committed to writing; (4) whether there has been partial performance of the agreement. *Id.* at 549. "[T]he language of the agreement [] is the most important." *Id.* Here, all four factors favor dismissal.

### 1. The Four-Page Memorandum of Understanding is an Unenforceable "Agreement to Agree" That Contemplated Definitive Documentation

The Memorandum of Understanding is no more than an "agreement to agree." "There is a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents." *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005) (applying New York law). "Ordinarily, when the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract." *DeCristofaro v. Nest Seekers E. End, LLC*, 54 Misc. 3d 1209(A), *9 (Sup. Ct. Suffolk Cty. Jan. 11, 2017) (holding that preliminary agreement signed by both parties did not create a binding partnership). A preliminary agreement is non-binding when it "contemplate[s] the negotiation of later agreements and if the consummation of those agreements [is] a precondition to a party's performance." *IDT Corp. v. Tyco Grp.*, 13 N.Y.3d 209, 215 (2009).

The four-page MOU explicitly contemplates the negotiation and execution of several definitive contractual documents and specifies the timing in which those documents were to be executed.   The MOU states that it "sets forth the material terms and conditions under which [the parties] . . . ***shall execute a mutually agreeable, Purchase and Sale Agreement ("PSA")*** for the transaction," and that the "MOU is necessary in order to proceed with the ***next step*** which is ***to escrow the above funds and execute a mutually agreed upon Purchase and Sale Agreement (PSA) and Escrow Agreement on immediate basis*** but not later than 10 days from signing this MOU."  (Ex. D.)  The Escrow Agreement would be "suitably modified within (3) three days from the date of this MOU" and "subject to the terms and conditions ***to be mutually agreed upon by the parties to the PSA***." *Id.*  Further, the MOU provides that an Escrow Account would be opened within three days of the signing of the MOU, and that Plaintiff would transfer $30,000,000.00 into the Escrow Account within two business days after opening. *Id.*

Because the MOU specifically contemplates the negotiation and execution of a "mutually agreeable" Purchase and Sale Agreement and related Escrow Agreement, the MOU, by its terms, expresses the parties' intent not to be bound until execution of future agreements.  Such provisions are "a powerful indication that the parties anticipated that they would execute binding contractual agreements at some future date, and did not rely on their preliminary understanding as a binding contract." *Prudential Ins. Co. of Am. v. Hilton Hotels Corp.*, No. 95 CIV. 5575 (KMW), 1996 WL 340002, at *7-8 (S.D.N.Y. June 19, 1996) (granting motion to dismiss breach of contract claim where non-binding MOU was to be followed by updated agreements); *accord Adjustrite*, 145 F.3d at 549 (holding letter of intent was not binding where it was to be followed by, among other things, the "execution of a sales agreement contract").  The language of the MOU is therefore strong evidence that it is non-binding. *See Aksman v. Xiongwei Ju*, 21 A.D.3d 260, 261-62 (1st

Dep't 2005) (dismissing breach of contract claim where document's "opening line, setting forth its purpose as 'a basis for conducting business between [the parties] . . .' as well as the letter's repeated statement that it will be replaced by a 'contract,' reflects the parties' intent not to be bound until an agreement establishing the proposed joint venture is reached").

> ### 2.   The MOU Contains an Express Reservation of the Right Not To Be Bound

The MOU "does not expressly state . . . that it became a binding agreement the moment it was signed." *Adjustrite*, 145 F.3d at 549; *see also Aksman*, 21 A.D.3d at 261 (holding letter of intent was non-binding where it "expresses the parties' intention to enter into a contract 'at a later date' and nowhere states that they intend to be legally bound until such future agreement is reached"). To the contrary, the MOU contained an express reservation of the right not to be bound. Under the heading "VALIDITY OF THIS MOU", the parties agreed that the "MOU is valid *subject to*" two conditions: "*verification of the Proof of Funds of USD 230 Million* by the Seller and *comfort letter from the bank that the Purchaser shall have the ability to arrange balance amount of funds to the tune of USD 500 million within 3 business days* from the signing of this MOU." (Ex. D.) This provision created the express right not to be bound because "[t]he term 'subject to' is the equivalent of 'conditional upon or depending on.'" *Hawkins on behalf of MedApproach, L.P. v. MedApproach Holdings, Inc.*, No. 1:13-CV-05434(ALC)(SDA), 2018 WL 1371404, at *3 (S.D.N.Y. Jan. 9, 2018), *report and recommendation adopted*, No. 13-CV-05434 (ALC), 2018 WL 1384502 (S.D.N.Y. Mar. 15, 2018) (citation omitted). The MOU therefore contained two express conditions to its validity: (1) verification of the Proof of Funds by Sahara US, and (2) that, within three business days of the signing of the MOU, Plaintiff would provide a bank comfort letter showing that Plaintiff had the "ability to arrange balance amount of funds to the tune of USD 500 million." Because the MOU was only valid "subject to" the satisfaction of

both conditions, which were never met, the MOU was invalid.  *See Hawkins*, 2018 WL 1371404, at *3 ("This Court finds that any [agreement] was conditional upon further discussion between counsel for the parties, and therefore that the 'subject to' language constituted an express reservation of the right not to be bound.").  Although not relevant for this factor, as discussed below, the Amended Complaint fails to allege facts showing that these conditions were satisfied.

### 3.    Agreements to Purchase $685 Million Worth of Interests in Iconic Hotels Are Not Finalized in Four-Page MOUs

In determining whether the agreement at issue is typically committed to a formal agreement, courts consider "the size of the transaction, the nature of the assets being purchased, and the length of the contemplated [] contracts."  *Adjustire*, 145 F.3d at 551; *Exportaciones Del Futuro S.A. de C.V. v. Iconix Brand Grp. Inc.*, No. 07 CIV 4145 (LBS), 2007 WL 2981949, at *2-3 (S.D.N.Y. Oct. 10, 2007) (stating that six-year contract potentially worth millions "is clearly the type of contract that would ordinarily be memorialized in a formal written agreement").  Courts have found transactions for $5 million to be sufficiently complex that they would typically be reduced to a formal writing.  *See, e.g.*, *Grgurev v. Licul*, No. 1:15-CV-9805-GHW, 2016 WL 6652741, at *7–8 (S.D.N.Y. Nov. 10, 2016) (describing "relatively complex" agreement which, among other things, was worth $5 million, had terms that would "carry into the future," and disposed of "substantial assets" of the parties involved, "as well as considerations of post-closing assumption of liability").

The four-page MOU contemplated Plaintiff raising $685 million dollars to purchase Membership Interests in the LLCs that owned iconic Manhattan property.  (Ex. D.)  Such an agreement is "the type that ordinarily would be committed not only to a writing but to a formal contract complete with representations and warranties and the other standard provisions usually found in sophisticated, formal contracts."  *See Adjustire*, 145 F.3d at 551 (letter agreement was

non-binding because, *inter alia,* million-dollar acquisitions are memorialized in formal contracts).

Further, "parties who purchase [assets]—particularly with brand recognition []—ordinarily require

sophisticated contractual provisions such as representations and warranties." *Id.* (discussing sale

of interests in Delmonico's restaurant).   Such "sophisticated contractual provisions" are

unsurprisingly absent from the four-page document which forms the basis of Plaintiff's claims.

### 4. Plaintiff Failed to Satisfy Conditions Precedent to Sahara US's Performance

Even if the MOU formed an enforceable contract, Plaintiff's breach of contract

claim should be dismissed for Plaintiff's failure to satisfy conditions precedent to Sahara US's

performance—specifically, providing Proof of Funds and placing $30 million into escrow.

A condition precedent is "an act or event" which "must occur before a duty to

perform a promise in the agreement arises." *IDT Corp.,* 13 N.Y.3d at 214.   When a plaintiff cannot

plead that it satisfied a condition precedent, the claim should be dismissed with prejudice. *Cabrera*

*Capital Markets, LLC v. Further Lane Sec., L.P.*, No. 12 CIV. 2898 DAB, 2013 WL 5462373, at

*8 (S.D.N.Y. Sept. 25, 2013) (dismissing complaint with prejudice under New York law where

"amendment would be futile because Plaintiff would not be able to allege that the condition

precedent occurred").

Plaintiff's conclusory allegation that UCRED "is in full compliance with each and

every legal obligation contained in [the MOU] including but not limited to submission proof of

funds and placement of the required monies into a segregated account," (Am. Compl. ¶ 19), is

insufficient to survive dismissal.   The allegation rings hollow because Plaintiff has failed to plead

any non-conclusory facts regarding when, and how, Plaintiff actually satisfied any of its

obligations within the strict time periods proscribed in the MOU.   (Am. Compl. ¶ 19.)   Plaintiff

does not allege any details regarding the proof of funds, and is silent as to whether the proof of

funds were satisfactory to Sahara US.  (Am. Compl. ¶ 19.)  And Plaintiff unequivocally failed to place $30 million in escrow at any point during the parties' negotiations, much less within the explicit five-day time period specified in the MOU, and does not allege that these conditions were satisfied.  (Ex. D; Am. Compl. ¶ 19.)  Where, as here, Plaintiff fails "to allege the satisfaction of th[e] condition precedent to their right to [performance], [Plaintiff] does not state a claim for breach" of the MOU (or that the MOU is an enforceable contract), and the claim should be dismissed with prejudice.  *See Microbanc, LLC v. InspireMD, Inc.*, No. 16 CV 3860-LTS, 2017 WL 722038, at *3 (S.D.N.Y. Feb. 23, 2017) (dismissing breach of contract claim under New York law where Plaintiff failed to allege that condition precedent was met).

Further, Plaintiff knew that Sahara US was simultaneously negotiating with numerous other potential purchasers of its interests in Plaza LLC and Dreams LLC.  (Am. Compl. ¶¶ 25, 34.)  Tellingly, Plaintiff does not allege the existence of any exclusivity provision between Sahara US and Plaintiff, and none can be found in the MOU, LOU, or the NDA.  (*See* Am. Compl.; Exs. D, F, G.)

**B.    Plaintiff Does Not Sufficiently Allege Breach of the Non-Circumvent Agreement and Cannot Allege Damages**

Plaintiff conclusorily alleges that Defendants breached a "legally binding non-circumvent, non-compete, non-disclosure agreement" by "seeking a separate agreement for the sale of The Shares with the Plaintiffs [sic] United's equity partner, and purportedly selling The Shares in The Sahara Plaza to a third party or parties."  (Am. Compl. ¶ 24.)  This claim should likewise be dismissed because Plaintiff fails to adequately allege a breach or damages.

Though Plaintiff's allegations are insufficient to even put Defendants on notice of the basis for their claim, Defendants presume that Plaintiff's claim is premised upon a Nondisclosure Agreement dated February 16, 2018, regarding UCRED's disclosure of information

to Sahara US and a related entity.  (Ex. G.)  Paragraph 18 of the NDA, titled, "Non-Circumvention,

Non-compete and Non-Solicitation," provides that Sahara "will not, without written permission

from UCRED, directly or indirectly, contact, circumvent, compete or solicit or deal with or

otherwise become involved with" certain enumerated entities which were "introduced, directly or

indirectly," to Sahara US through UCRED.  (Ex. G.)  None of the named Defendants are listed in

the NDA.  (Ex. G.)  Further, the NDA does not contain any exclusivity provisions and is utterly

silent as to Sahara US's rights to negotiate freely and transact business with third parties. (Ex. G.)

Nor will Plaintiff be able to allege damages because Plaintiff has not alleged that Sahara US

transacted any business with the parties mentioned in the NDA.

      The Complaint fails to state a plausible claim or to put Defendants on notice of

Plaintiff's claim that Defendants sought a separate agreement with one of the enumerated entities

purportedly covered by the NDA.  Further, the NDA, by its terms, has no application to Sahara

US's rights to sell its Membership Interests to anyone else.  Plaintiff's claim for breach of the NDA

must therefore be dismissed.

### C.    Plaintiff's Claims for Unjust Enrichment and Fraudulent Inducement Should Be Dismissed as Duplicative of the Breach of Contract Claim

      Courts routinely dismiss both unjust enrichment and fraudulent inducement claims

which are merely duplicative of claims for breach of contract.  *See, e.g.*, *Corsello v. Verizon*, 18

N.Y.3d 777, 790 (2012) ("An unjust enrichment claim is not available where it simply duplicates,

or replaces, a conventional contract [claim]."); *Hyman v. Burgess*, 125 A.D.3d 1213, 1214 (3d

Dep't 2015) (dismissing unjust enrichment claim where assertions "echo" breach of contract

claim); *Doller v. Prescott*, 56 Misc.3d 1204(A), *6 (Sup. Ct. Albany Cty. June 26, 2017)

(dismissing duplicative fraudulent inducement claim where "the alleged misrepresentations

directly concern the purchase of [] shares . . . [which is] the same conduct that forms the basis of the contractual claim").

Claims are "duplicative" of a breach of contract claim specifically when, as here, there is a written document governing the subject matter, the plaintiff fails to allege a legal duty *independent* of, and *extraneous* to, the alleged contract forming the basis for the breach of contract claim, and the plaintiff seeks the same damages in each claim.  *See, e.g.*, *Brown v. Brown*, 12 A.D.3d 176, 176 (1st Dep't 2004) (dismissing duplicative tort claims because "a simple breach of contract claim may not be considered a tort unless a legal duty independent of the contract—i.e., one arising out of circumstances extraneous to, and not constituting elements of, the contract itself—has been violated"); *Krantz v. Chateau Stores of Canada Ltd.*, 256 A.D.2d 186, 187 (1st Dep't 1998) (dismissing fraud claim where plaintiff did not "allege a breach of duty which is collateral or extraneous to the contract between the parties"); *Brennan v. J.P. Morgan Securities, Inc.*, 7 Misc.3d 1013(A), *4 (Sup. Ct. N.Y. Cty. Aug. 31, 2004) (dismissing unjust enrichment claim "where there is a written document that covers the subject matter of the dispute"); *Benham v. eCommission Sols., LLC*, 118 A.D.3d 605, 607 (1st Dep't 2014) (granting summary judgment to dismiss duplicative unjust enrichment claim "which seeks precisely the same damages as [plaintiff's] claim for breach of contract" and was thus "indistinguishable" from contract claim); *Doller*, 56 Misc.3d 1204(A), *6 (dismissing unjust enrichment claim where plaintiff "demands the same measure of damages as [their] contractual claim").

Plaintiff's unjust enrichment and fraudulent inducement claims are simply duplicative restatements of the baseless breach of contract claim and seek the same measure of damages.  Plaintiff merely repeats prior allegations and then conclusorily recites the basic legal

17

elements of each claim.  (Am. Compl. ¶¶ 28, 31.)  And Plaintiff seeks the same monetary damages—One Billion Dollars—on each claim.  (Am. Compl. ¶¶ 22, 29, 32.)

The unjust enrichment claim must therefore be dismissed because it is "nothing more than a restatement of [the] failed contractual claim," as should the fraudulent inducement claim because the "allegations that [plaintiff] was fraudulently induced to enter into the MOU with [Sahara US] are not sufficiently collateral from the alleged breach of contract so as to state a separate cause of action."  *Doller*, 56 Misc. 3d 1204(A), *6 (dismissing duplicative unjust enrichment and fraudulent inducement claims).

In any event, Plaintiff fails to adequately plead the substantive elements required to state either claim.  Claims for unjust enrichment are dismissed where, as here, the complaint "did not identify any money that was retained by [defendant] at [plaintiff's] expense," *Lebovits v. Bassman*, 120 A.D.3d 1198, 1199 (2d Dep't 2014), and when plaintiffs "fail[] to explain why the benefit retained by [defendants] was unjust."  *Acquino v. Douglass Elliman Realty, LLC*, 155 A.D.3d 472, 473 (1st Dep't 2017) (affirming dismissal of unjust enrichment claims).   And fraudulent inducement claims, which are subject to the heightened pleading requirements of FRCP 9(b), are dismissed where a plaintiff does not allege "the words used by defendants and the date of the alleged false representations," *Gregor v. Rossi*, 120 A.D.3d 447, 447 (1st Dep't 2014) (dismissing fraudulent inducement claim), and because "general allegations that defendant entered into [the MOU] lacking the intent to perform are insufficient."[7] *Laura Corio M.D., PLLC v. R. Lewin Interior Design, Inc.*, 49 A.D.3d 411, 412 (1st Dep't 2008); *see Brook v. Simon & Partners, LLP*, No. 17 CIV. 6435 (GBD), 2018 WL 2383142, at *8-9 and n.9 (S.D.N.Y. May 14, 2018)

---

[7] Further, Plaintiff paradoxically seeks to claim that it was fraudulently induced into signing the MOU—a claim typically brought to avoid obligations under a contract—while simultaneously seeking to enforce the MOU as a binding contract.

(dismissing conclusory fraudulent inducement claim under 9(b) pleading standard and because claim was duplicative of breach of contract claim).

>    **D.    Because Plaintiff Does Not Have a Valid Contract and Fails To Plead the Required Elements, Plaintiff's Tortious Interference Claim Must Also Be Dismissed [8]**

To survive dismissal, Plaintiff must plead "the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996) (affirming dismissal of complaint alleging, *inter alia*, tortious interference). Further, "a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct," and "must support his claim with more than mere speculation." *Burrowes v. Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006) (dismissing tortious interference claim where plaintiff offered "only scant speculation without the support of relevant facts" and failed to allege "but for" causation). And, conclusively, claims for tortious interference must be dismissed when there is no underlying breach of contract. *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 595 (2012) ("Since there was no underlying breach of contract, [Plaintiff]'s tortious interference claim against [defendant] also fails.").

Because Plaintiff's breach of contract claim fails, as described *supra* Part II.A., Plaintiff's tortious interference claim must also be dismissed with prejudice. *Oddo Asset Mgmt. v. Barclays Bank PLC*, 36 Misc. 3d 1205(A) (Sup. Ct. N.Y. Cty. Apr. 21, 2010), *aff'd*, 84 A.D.3d

---

[8] The Amended Complaint is unclear regarding whether Plaintiff's fifth cause of action for tortious interference is alleged against Sahara US. The Amended Complaint says "FOR A FIFTH CAUSE OF ACTION AGAINST THE DEFENDANTS **SAHARA US**, SAHARA PLAZA, SAHARA DREAMS AND ROY," but paragraph 34, which contains Plaintiff's allegations regarding tortious interference, does not make allegations against Sahara US. Because one cannot interfere with a contract to which one is a party, Plaintiff presumably does not bring this claim against Sahara US.

692 (1st Dep't 2011), *aff'd*, 19 N.Y.3d 584 (2012) (dismissing complaint with prejudice).  And regardless of the validity of the contract, Plaintiff's bare-bones allegations that Plaza LLC, Dreams LLC, and Roy "had full and complete knowledge of [the MOU] and tortuously [sic] interfered with the same by, inter-alia, seeking to sell and purportedly selling of [sic] The Shares to a third party or parties" warrants dismissal for, among other reasons, failure to allege more than "scant speculation without the support of relevant facts" and failure to allege "but for" causation.  *See Burrowes*, 25 A.D.3d at 373.

### E.    Because Plaintiff Fails to Allege Any Conduct By Plaza LLC, Dreams LLC, and Subrata Roy, They Must Be Dismissed From the Action with Prejudice

Plaintiff does not allege the existence of any contract with Plaza LLC, Dreams LLC, or Subrata Roy in his individual capacity, nor any conduct whatsoever undertaken by those Defendants.  The Amended Complaint alleges that in two separate MOUs [Claim 1] "signed by Defendant Roy *on behalf of Defendant Sahara US*, Defendant *Sahara US agreed to sell The Shares of Sahara US* in the Sahara Plaza and in the Sahara Dreams for an agreed upon amount to Plaintiff United."  (Am. Compl. ¶ 10.)  Plaintiff also alleges that [Claim 2] "*Plaintiff United and the Defendant Sahara US* entered into a legally binding . . . Non-Circumvent Agreement[]."  (Am. Compl. ¶ 24.)  Therefore, the contract claims must be dismissed against Plaza LLC, Dreams LLC, and Roy.  *See Carol v. Madison Plaza Assocs., LLC*, 95 A.D.3d 735, 736 (1st Dep't 2012) ("The breach of contract . . . claims should have been dismissed as against the [movant], since it was [a co-defendant], not the [movant], that entered into the purchase agreement with plaintiff . . . ."); *Brown v. Noble, Inc.*, 29 Misc. 3d 1230(A) (Sup. Ct. N.Y. Cty. Dec. 1, 2010) (dismissing breach of contract claim against individual who "is a signatory in his capacity as President of [the company]" and is "not a party to the contract").

Plaintiff's duplicative unjust enrichment [Claim 3] and fraudulent inducement [Claim 4] claims—which are merely re-stylized breach of contract claims—do not allege any conduct by Plaza LLC , Dreams LLC, or Roy.  (*See* Am. Compl. ¶¶ 27-32.)  And for the reasons discussed *supra*, Part II.D., Plaintiff's tortious interference claims [Claim 5] are unsubstantiated. Therefore, the Amended Complaint should be dismissed, in its entirety, with prejudice, against Plaza, Dreams, and Roy.[9]

## **CONCLUSION**

For the above-stated reasons, Defendants Sahara US, Plaza LLC, and Dreams LLC respectfully request that the Court immediately vacate/cancel the notices of pendency, award related costs and expenses, and dismiss the Amended Complaint with prejudice.

---

[9] Nor has Plaintiff alleged a basis for personal jurisdiction over Mr. Roy, a domiciliary of India.  Despite the allegations that Mr. Roy signed documents on behalf of Sahara US, general jurisdiction under CPLR 301 over a corporation does not provide jurisdiction over its officers.  *See Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (1982) ("[A company's president] does not subject himself, individually, to the CPLR 301 jurisdiction of our courts, however, unless he is doing business in our State individually.").  Nor can this court exercise long-arm jurisdiction over Mr. Roy under CPLR 302(a)(1) because Plaintiff has not alleged that Mr. Roy transacted any business with Plaintiff within the state.  CPLR 302(a)(1); *Chambers v. Weinstein*, 44 Misc. 3d 1224(A) (Sup. Ct. N.Y. Cty. Aug. 22, 2014) (no jurisdiction under CPLR 302(a)(1) where negotiations took place out of state); *King Cty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 315 (S.D.N.Y. 2011) (dismissing action against individual executive defendants where, *inter alia*, individual defendants conducted "transactions or activities that occurred, or were directed outside, of the forum;" noting "that corporate entities may be sued in New York on the basis of the [company's alleged] fraud does not automatically establish that individual officers can be subject to suit here").

Dated:   September 13, 2018
        New York, New York

**MILBANK, TWEED, HADLEY &
McCLOY LLP**

   /s/  *Alan J. Stone*   
Alan J. Stone
Thomas A. Quinn
28 Liberty Street
New York, New York 10005
Phone: (212) 530-5000
Fax:  (212) 530-5219
astone@milbank.com
tquinn@milbank.com

*Counsel for Defendants Sahara US
Corporation, Sahara Plaza LLC, and
Sahara Dreams LLC*

22